AO 106 (Rev. 06/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

**FILED**

for the

Eastern District of Missouri

NOV **2 6** 2019

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

In the Matter of the Search of )
)
IN THE MATTER OF THE SEARCH OF INFORMATION )
ASSOCIATED WITH FACEBOOK USER ID 100000700056274 )
THAT IS STORED AT PREMISES CONTROLLED BY )
FACEBOOK, INC. )

Case No.     4:19 MJ 3256 NCC

## APPLICATION FOR A SEARCH WARRANT

I,   ATF SA Rachel Capps                , a federal law enforcement officer or an attorney for the government
request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

SEE ATTACHMENT A - PROPERTY TO BE SEARCHED

located in the      NORTHERN      District of        CALIFORNIA      , there is now concealed

SEE ATTACHMENT B - ITEMS TO BE SEIZED AND SEARCHED

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18:2119 | Theft of Motor Vehicles (Carjackings) |
| 18:924(j) | Murder Committed by use of a firearm in furtherance of a violent crime |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of      days (give exact ending date if more than 30 days:           ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Rachel Capps, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives
*Printed name and title*

Sworn to before me and signed in my presence.

Date:      November 25, 2019

*Judge's signature*

City and state:   St. Louis, MO

Honorable Noelle C. Collins, U.S. Magistrate Judge
*Printed name and title*

AUSA:   Jennifer Szczucinski

**FILED**

NOV **2 6** 2019

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

IN THE MATTER OF THE SEARCH OF )
INFORMATION ASSOCIATED WITH )   No. 4:19 MJ 3256 NCC
FACEBOOK USER ID 100000700056274 )
THAT IS STORED AT PREMISES )
CONTROLLED BY FACEBOOK, INC. )   FILED UNDER SEAL
 )

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Rachel Capps, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) and Federal Criminal Procedure 41 for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. The requested warrant would require Facebook to disclose to the United States records and other information in its possession, pertaining to the subscriber or customer associated with the user ID as further described in attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since January 2015. I am currently assigned to the Kansas City Field Division, Saint Louis Field Office. My duties involve conducting criminal investigations into cases of illegal possession/transfer of firearms, firearms trafficking, and violent crimes involving firearms and narcotics trafficking. Among other activities, I have participated in undercover operations using confidential sources and undercover law enforcement officers,

1

debriefed witnesses and confidential sources, and utilized social media and GPS location information to advance investigations.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Sections 2119 (carjacking) and 924(j) (murder committed by the use of a firearm in furtherance of a crime of violence) have been committed by unknown persons. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

**JURISDICTION**

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

**LOCATION TO BE SEARCHED**

6.      The location to be searched is:

**Facebook ID 100000700056274** (hereinafter referred to as "Subject Account(s)") located at 1601 Willow Road, Menlo Park, CA 94025, further described in Attachment A. The items to be reviewed and seized by the United States are described in Part II of Attachment B.

## BACKGROUND RELATING TO FACEBOOK

7.     The Internet is in part a computer communications network using interstate and foreign telephone and communication lines to transmit data streams, including data streams used to provide a means of communication from one computer to another and used to store, transfer and receive data and image files.

8.     An "Internet Protocol" (IP) address is a unique series of numbers, separated by a period, that identifies each computer using, or connected to, the Internet over a network. An IP address permits a computer (or other digital device) to communicate with other devices via the Internet. The IP addresses aids in identifying the location of digital devices that are connected to the Internet so that they can be differentiated from other devices. As a mailing address allows a sender to mail a letter, a remote computer uses an IP address to communicate with other computers.

9.     An "Internet Service Provider" (ISP) is an entity that provides access to the Internet to its subscribers.

10.     The term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

11.     Facebook is a business and company that operates as a remote computing service, a provider of electronic communications services through ISPs. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

12.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the

3

user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

13.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter. Facebook can identify all users who are currently registered to a particular group and can identify the administrator and creator of the group. Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and administrator, as well as the current status of the group profile page.

14.     A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

15.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Depending on the user's privacy settings, Facebook may also obtain and store the physical location of the user's device(s) as they interact with the Facebook service on those

4

device(s). Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

16.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

17.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (*i.e.*, label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. Facebook allows users to edit or delete comments on their own profile pages,

5

and users can adjust their profile settings to allow them to pre-approve comments on their own profile pages.

18.     In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

19.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

20.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

21.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

22.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

23.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

24.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a

6

Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

25.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

26.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. When a given Facebook account is deleted, Facebook retains certain information relating to that account for some period of time, including user identity information, IP logs, and other data. Even if a given user deletes data, Facebook stores such data for extended periods of time on Facebook's servers.

27.     Messages, photos, audio videos, and other records stored on Facebook server by a subscriber may not necessarily be located in the subscriber's home/work computer. The subscriber or user may store data on Facebook servers for which there is insufficient storage space in the

7

subscriber's computer and/or which he/she does not wish to maintain in the computer at his/her residence or employment. A search of the files in the computer at the subscriber's residence or place of employment will not necessarily uncover the files that the subscriber has stored on the Facebook server. Therefore, the computers of Facebook are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and account application.

28.     By their very nature, websites, social networking accounts, and internet-based applications described herein are kept and stored in computers and electronic-memory devices by the host companies, in addition to or in lieu of hard-copy versions of this data. Because such evidence is stored electronically, the data and evidence of the crimes described herein may be stored and be present for long periods of time.

29.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

30.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation.  For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

31.    Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

9

## **PROBABLE CAUSE**

32.   On May 4, 2019, Jessica Vinson ("Vinson") was located on the Hodiamont Tracks behind 5326 Vernon in the City of St. Louis, within the Eastern District of Missouri, deceased from a gunshot wound to the side of her head.  On the same date, St. Louis Metropolitan Police Department ("SLMPD") officers received a call for a burglary at Vinson's residence located at 4362 West Maffit, in the City of St. Louis, within the Eastern District of Missouri.  Officers were advised that five suspects were removing items from Vinson's residence, including a television and shoes/shoe boxes.  Officers were further advised that the individuals removing items from Vinson's residence left in two vehicles, a grey Chevy Traverse and a white SUV.  An investigation revealed that Vinson's Apple IPad and at least one television were stolen.

33.   On May 6, 2019, SLMPD officers observed Vinson's Dodge Charger in the area of Belt and Page.  The officers followed the vehicle and attempted to conduct a traffic stop; however, the vehicle fled.  Thereafter, the vehicle was involved in an accident in the area of Grand and Interstate 70, and became disabled. The occupants exited the vehicle, unsuccessfully attempted to flee, and were placed under arrest. The driver of Vinson's vehicle was identified as Anthony D. JONES Jr. (DOB: xx-xx-1992, SSN: xxx-xx-4226). The passenger of Vinson's vehicle was identified as Tyeishia M. ADAIL (DOB: xx-xx-1993, SSN: xxx-xx-4159).  A search of the vehicle revealed narcotics, a Ruger model P95 semi-automatic 9mm pistol, and Vinson's stolen iPad.  A consent to search at ADAIL's apartment, 4955 Warwick Ave., Saint Louis, Missouri 63116, revealed items taken from the burglary of Vinson's apartment, including televisions.

34.   On May 6, 2019, SLMPD Homicide Division interviewed JONES, who admitted having contact with Vinson in the early morning hours of May 4, 2019, and riding in her Dodge Charger.

10

35.     On May 6, 2019 SLMPD Homicide Division interviewed ADAIL, who indicated seeing JONES with Vinson in the early morning hours of May 4, 2019. ADAIL further indicated JONES arrived at ADAIL's apartment, located at 4955 Warwick Ave., Saint Louis, Missouri, on the afternoon of May 4, 2019 driving Vinson's charger and in possession of Vinson's iPad and televisions. ADAIL denied having any knowledge of Vinson's identity or her death.

36.     On August 8, 2019, R.H., whose DNA was located inside Vinson's vehicle, was interviewed by SLMPD detectives. R.H. advised detectives that JONES requested and paid him/her to clean what appeared to be blood and brain matter from the interior of Vinson's vehicle while at a gas station at Natural Bridge and Goodfellow. R.H. described cleaning out Vinson's vehicle on or about the date May 4, 2019.

37.     On September 3, 2019, Eric PORTER was interviewed by SLMPD Homicide Division as his fingerprints were located on the victim's television that was recovered from ADAIL's residence. PORTER advised he had communication with ADAIL via Facebook wherein ADAIL requested PORTER's assistance in selling and/or moving televisions into her home. PORTER advised he knew ADAIL as JONES' girlfriend; PORTER and JONES are grew up together. PORTER stated he went to ADAIL's home and removed a television and shoe boxes from a white vehicle and carried the items into ADAIL's residence. ADAIL had advised PORTER that she had "hit a lick" in reference to the televisions which he understood to mean they were stolen. PORTER further advised that he was aware of the date JONES was arrested in a Vinson's Dodge Charger and he believed he moved the televisions into ADAIL's residence two days prior to said incident.

11

38.     Based on this information, among other investigative methods, your affiant identified the **Subject Account** as PORTER's Facebook account.  On October 7, 2019, I sent a preservation request to Facebook regarding the **Subject Account**.

39.     Based on the totality of the circumstances, it is believed PORTER utilized the **Subject Account** the day Vinson was murdered to communicate with ADAIL and other unknown persons.  It is further believed that Facebook user's IP log, stored electronic communications, and other data retained by Facebook, will assist investigators in identifying person(s) responsible for violations of Title 18, United States Code, Sections 2119 (carjacking) and 924(j) (murder committed by the use of a firearm in furtherance of a crime of violence).

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

40.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the United States copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, United States-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

41.     Based on the forgoing, I request that the Court issue the proposed search warrant. The United States will execute this warrant by serving the warrant on Facebook.  Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

12

42. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

43. I further request that the Court order that all papers in support of this application, including the affidavit and warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

RACHEL CAPPS
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and
Explosives

Subscribed and sworn to before me on November 26, 2019

HONORABLE NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE

13

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information associated with the Facebook account(s) and/or user

ID **100000700056274** that is stored at premises owned, maintained, controlled, or operated by

Facebook Inc., a company located at 1601 Willow Road, Menlo Park, CA 94025.

1

## ATTACHMENT B

### Particular Things to be Seized

I.     / **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f),

Facebook is required to disclose, from May 1, 2019 to May 6, 2019, the following information to the government for the account and user ID listed in Attachment A:

(a)     All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

(b)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(c)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that account and user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

2

(d)    All "check ins" and other location information;

(e)    All IP logs, including all records of the IP addresses that logged into the account;

(f)    All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(g)    All information about the Facebook pages that the account is or was a "fan" of;

(h)    All past and present lists of friends created by the account;

(i)    All information about the user's access and use of Facebook Marketplace;

(j)    The types of service utilized by the user;

(k)    The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(l)    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(m)    All records pertaining to communications between Facebook and any person regarding the user or the account and user ID, including contacts with support services and records of actions taken.

(n)    Any and all cookies associated with or used by any computer or web browser associated with the account, including the IP addresses, dates, and times associated with the recognition of any such cookie;

(o)    All records of Facebook searches performed by the account;

(p)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

3

(q)     All photos and videos uploaded by that account and user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(r)     All location data associated with the account created, uploaded, or shared by the account;

(s)     All other records and contents of communications and messages made or received by the user, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests.

**Facebook is hereby ordered to disclose the above information to the United States within 14 days of the date of this warrant.**

**II.     Information to be seized by the United States**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 2119 and 924(i) involving persons unknown from May 1, 2019 to May 6, 2019, including, for each account or user ID identified on Attachment A, information pertaining to the following matters:

(a) Communications between listed user ID and other accounts leading up to her Vinson's murder, communications between the listed user ID and other accounts subsequent to Vinson's murder, and steps taken to cover up or hide the carjacking and murder of Jessica Vinson.

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

4

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the account or user ID, including records that help reveal the whereabouts of such person(s).

## **CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO**
## **FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)**

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Facebook, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Facebook. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Facebook, and they were made by Facebook as a regular practice; and

b. such records were generated by Facebook's electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Facebook in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by Facebook, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                                     Signature

6